UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GEORGE PEEK #421782,

        Plaintiff,

v.

CHIPPEWA COUNTY, et al.,

        Defendants.
_____/

Case No. 2:19-cv-262

Hon. Janet T. Neff
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses the motion for summary judgment filed by Defendants Chippewa County and Chippewa County Sheriff Michael Bitnar.  (ECF No. 28.)

Plaintiff in this case — state prisoner George Peek — filed suit pursuant to 42 U.S.C. § 1983 on December 30, 2019.  In his initial unverified complaint, Peek alleged that, while he was confined at the Chippewa County Correctional Facility (CCCF, or the Jail) in Sault Sainte Marie, Michigan, staff refused to allow him the special diet or exercise necessary to manage his diabetes.  (ECF No. 1, PageID.3.) Peek said that as a result, he is now insulin-dependent and experiences poor circulation.  (*Id.*)

In his initial complaint, Peek named Correct Care Solutions employee Susan Lightfoot as the sole defendant. (*Id.*) But after Lightfoot moved to dismiss the complaint for failure to state a claim (ECF No. 13), Peek moved to amend his complaint (ECF No. 17). This Court granted both motions (ECF No. 21), and Peek filed his amended complaint, which was also unverified, asserting that Chippewa County and its Sheriff, Michael Bitnar, provided inadequate care for Peek's diabetes. (ECF No. 22, PageID.144-145.)

Defendants now move for summary judgment, asserting that Peek: (1) failed to exhaust his administrative remedies prior to filing suit, (2) failed to make a showing of physical injury, (3) failed to create a genuine issue of material fact that his constitutional rights were violated, (4) failed to create a genuine issue of material fact that a municipal policy was the driving force behind a violation of his constitutional rights, and (5) Bitnar is entitled to qualified immunity. (ECF No. 28, PageID.155.) Peek did not respond. In fact, Peek has not filed anything with the Court since his amended complaint in December of 2020, nor has he provided the Court with his new address since being paroled on April 6, 2021.

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment because Peek failed to exhaust his claims, and because he has not prosecuted his case.

## II.  Uncontroverted Facts

Because Peek's complaints were unverified, and he has not put additional facts on the record, the only facts in this case are those set forth in the affidavits provided by Defendants.

Peek was incarcerated at the CCCF in 2019.  (ECF No. 28-2, PageID.185 (Paul Stanaway Affidavit).)  In general population, Peek was permitted to exercise at any time between the hours of 6:00 a.m. and 11:00 p.m.  (*Id.*, PageID.186.) Permissible exercise included pushups, sit-ups, squats, or walking.  Peek could also request outdoor recreation.  (*Id.*)  The Jail documented requests for outdoor recreation and tracked whether the request was granted or denied.  (*Id.*)

From March 6, 2019 to April 4, 2019, Peek was in segregation.  (*Id.*)  During this time, he was offered a walk twenty-five times total and outdoor recreation approximately three times per week.  (*Id.*)  On four dates, Peek was not offered walks because he was on suicide watch.  (*Id.*)

From April 5, 2019 to December 30, 2019, Peek had the opportunity to engage in outdoor recreation more than one-hundred times.  (*Id.*)

CCCF allows for medical diets when it is "deemed necessary and prescribed by medical personnel." (*Id.*, PageID.187.)  Chippewa County Sheriff Michael Bitnar did not have direct involvement in Peek's diet, and in fact never had direct contact with Peek.  (ECF No. 28-1, PageID.182 (Michael Bitnar Affidavit).)

CCCF records show that Peek submitted three Letters of Concern during his confinement. (ECF No. 28-2, PageID.185.) Records do not show that Peek appealed any Letters of Concern through Step III of the CCCF grievance process. (*Id.*)

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV.  Failure to Exhaust

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff

---

[1]  Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

4

on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19;

*Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

CCCF Policy Number (P.N.) 3.10 sets forth the applicable grievance procedures for its inmates. (ECF No. 28-3.) Though Defendants provided the

version of Policy Number 3.10 that was updated on September 4, 2020, after the relevant timeframe for this case, the update did not alter the grievance procedures. (ECF No. 28-2, PageID.186.) Inmates must first attempt to resolve a grievable issue informally within five business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. CCCF P.N. 3.10(IV)(A). If informal resolution is unsuccessful, the inmate may file a Step I Letter of Concern within five business days of the attempted informal resolution. *Id.* The inmate submits the Step I Letter of Concern to the shift Corporal, who serves as the respondent. CCCF P.N. 3.10(V)(A)-(B). The Jail Administrator or a designee thereof reviews all Step I responses to ensure that they "appropriately address[] the issue and accurately reflect[] Department Policy and Procedure." CCCF P.N. 3.10(V)(C). The Policy Number also provides the following directions for completing Letters of Concern:

> The forms must be complete and handwriting legible. Issues should be stated briefly but concisely. Information provided shall be limited to the facts involving the issue being grieved (e.g. who, what, when, where, why, and how), Dates, times, places, and names of all those involved in the issue being grieved are to be included.

CCCF P.N. 3.10(IV)(C).

If the inmate is dissatisfied with the Step I response or does not receive a timely Step I response, he may appeal to Step II by obtaining a Letter of Concern Appeal form from the Step I respondent. CCCF P.N. 3.10(VI)(A)-(B). The inmate must submit the completed Letter of Concern Appeal form to the Jail Sergeant, who

serves as the respondent. CCCF P.N. 3.10(VI)(C)-(D). The Jail Administrator or a designee thereof reviews all Step II responses as well. CCCF P.N. 3.10(VI)(E).

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III by obtaining a Letter of Concern Appeal form from the Step II respondent. CCCF P.N. 3.10(VII)(A)-(B). The inmate must submit the completed Letter of Concern Appeal form to the Sheriff or the designee thereof, who serves as the respondent. CCCF P.N. 3.10(VII)(C)-(D). The Step III response is final. CCCF P.N. 3.10(VII)(E). There is a separate Letter of Concern process for inmates experiencing an emergent issue. CCCF P.N. 3.10.1.

Along with their motion for summary judgment, Defendants submitted the affidavit of Lieutenant (Lt.) Paul Stanaway, who currently serves as the Jail Administrator at CCCF. (ECF No. 28-2, PageID.185.) According to Lt. Stanaway, CCCF's records show that Peek submitted three Letters of Concern during his time at CCCF. Those Letters of Concern addressed: (1) CCCF medical staff placing diabetic restrictions on Peek's commissary but not providing him the "right" foods or exercise equipment (ECF No. 28-4, PageID.201-202), (2) CCCF staff showing up to check Peek's blood sugar after he started eating breakfast (*id.*, PageID.203), and (3) staff not providing Peek with his medication for acid reflux and sleep (*id.*, PageID.204). But regardless of what these Letters of Concern grieved, Peek did not appeal any of them through Step II or III of the process identified above. (ECF No. 28-2, PageID.185.) As such, Peek failed to exhaust his administrative remedies.

8

V.   **Failure to Prosecute**

In addition to his failure to exhaust, Peek has failed to prosecute his claims. The Court has authority to dismiss a case under Fed. R. Civ. P. 41(b) when a plaintiff fails to prosecute his case or to comply with rules, or a court order. It is well settled that the Court has inherent authority to dismiss sua sponte an action with prejudice for failure to prosecute. *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962). As the United States Supreme Court explained:

> The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of nonsuit and non prosequitur entered at common law, e.g., 3 Blackstone, Commentaries (1768), 295—296, and dismissals for want of prosecution of bills in equity, e.g., id., at 451. It has been expressly recognized in Federal Rule of Civil Procedure 41(b), which provides, in pertinent part:
> "(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. * * *
> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."
> Petitioner contends that the language of this Rule, by negative implication, prohibits involuntary dismissals for failure of the plaintiff to prosecute except upon motion by the defendant. In the present case there was no such motion.
> We do not read Rule 41(b) as implying any such restriction. Neither the permissive language of the Rule—which merely authorizes a motion by the defendant—nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief. The authority of a court to

9

> dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Id.* (footnotes omitted).

At some point, Peek was transferred to the jurisdiction of the Michigan Department of Corrections (MDOC). Peek was paroled from the MDOC on April 6, 2021 and has yet to update this Court on his new address. *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=421782 (last visited Jan. 29, 2022).

Furthermore, Peek has not filed any pleadings in this case Since December of 2021. Accordingly, Peek has failed to prosecute this case.

## VI.    Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment because there are no genuine issues of material fact, and Peek failed to exhaust and to prosecute his claims.

If the Court accepts this recommendation, this case will be dismissed.

Dated:   January 31, 2022                           /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).